**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

<table>
<tr><td>

**MATTHEW MULLEN,**

               Plaintiff,

   v.

**ASTRAZENECA PHARMACEUTICALS, LP,**

              Defendant.

</td><td>

Civil Action No. 2:23-cv-03903

</td></tr>
</table>

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ASTRAZENECA'S
<u>MOTION TO DISMISS PLAINTIFF MATTHEW MULLEN'S COMPLAINT</u>**

**TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ................................................................................................ 1

II. FACTUAL BACKGROUND AND ALLEGATIONS ...................................... 4

    A.  AZ Announces the Uniform Vaccine Policy for All U.S. Employees.................. 4

    B.  Plaintiff's Request for an Exemption From the Vaccination Requirement Was Based on Non-Religious Considerations. ...................................................... 4

    C.  Plaintiff's Follow-up Communications in the Interactive Process Did Not Provide Any Further Information About His Beliefs. ........................................... 5

    D.  After Plaintiff Chose to Remain Unvaccinated, AZ Terminated His Employment For Failing to Comply with the Vaccine Mandate. ......................... 6

III. LEGAL STANDARD ........................................................................................ 7

IV. ARGUMENT ..................................................................................................... 8

    A.  The Court Should Dismiss Plaintiff's Failure to Accommodate Claims. .............. 8

    B.  Plaintiff's Disparate Treatment Claims Should Be Dismissed. ........................... 15

    C.  Plaintiff's Retaliation Claims Also Fail. ............................................................ 19

        1.  Plaintiff's Retaliation Claims Fail Because He Has Not Engaged In Protected Activity. ................................................................................... 19

        2.  Even if Plaintiff Engaged in Protected Activity, There Is No Causal Connection Between That Activity And His Termination. ..................... 21

V.  CONCLUSION ................................................................................................ 23

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Africa v. Com. of Pa.*,
   662 F.2d 1025 (3d Cir. 1981)................................................................................10

*Al Refat v. Franklin Fin. Servs. Corp.*,
   No. 19-CV-1507, 2021 WL 2588789 (M.D. Pa. June 24, 2021)............................19

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..........................................................................................7, 8, 20

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)................................................................................................7, 8

*Blackwell v. Lehigh Valley Health Network*,
   No. 5:22-CV-03360-JMG, 2023 WL 362392 (E.D. Pa. Jan. 23, 2023) .......................9, 14, 20

*Bridges v. Houston Methodist Hosp.*,
   543 F. Supp. 3d 525 (S.D. Tex. 2021), *aff'd sub nom. Bridges v. Methodist
   Hosp.*, No. 21-20311, 2022 WL 2116213 (5th Cir. June 13, 2022) ........................15

*Brown v. Children's Hosp. of Philadelphia*,
   794 Fed. App'x. 226 (3d Cir. 2020)....................................................................9, 10

*Cope v. Soc. Sec. Admin.*,
   532 F. App'x 58 (3d Cir. 2013) ..............................................................................8

*D'Cunha v. Northwell Health Sys.*,
   No. 22-CV-0988, 2023 WL 2266520 (S.D.N.Y. Feb. 28, 2023), *aff'd*, No. 23-
   476-CV, 2023 WL 7986441 (2d Cir. Nov. 17, 2023)............................................17

*DeVore v. Univ. of Kentucky Bd. of Trustees*,
   No. 22-CV-00186, 2023 WL 6150773 (E.D. Ky. Sept. 20, 2023) .........................13

*Divine Equal. Righteous v. Overbrook Sch. for the Blind*,
   No. CV 23-846, 2023 WL 4763994 (E.D. Pa. July 26, 2023)................................8, 17, 19, 21

*Doe(s) v. Pittsburgh Reg'l Transit*,
   No. 2:22-CV-01736, 2023 WL 4867850 (W.D. Pa. July 31, 2023) .......................17

*Equal Emp. Opportunity Comm'n v. N. Mem'l Health Care*,
   908 F.3d 1098 (8th Cir. 2018) ...............................................................................20

*Fallon v. Mercy Cath. Med. Ctr. of Se. Pennsylvania*,
   877 F.3d 487 (3d Cir. 2017)..............................................................................9, 10, 13

*Finkbeiner v. Geisinger Clinic*,
623 F. Supp. 3d 458 (M.D. Pa. 2022), *appeal dismissed*, No. 22-2714, 2023
WL 6057495 (3d Cir. Sept. 18, 2023) ...................................................................9, 10, 20, 21

*Foshee v. AstraZeneca Pharms. LP*,
No. 23-CV-00894, 2023 WL 6845425 (D. Md. Oct. 17, 2023) .......................................12, 14

*Fowler v. UPMC Shadyside*,
578 F.3d 203 (3d Cir. 2009).................................................................................................20

*Friend v. AstraZeneca Pharms. LP*,
No. 22-CV-03308, 2023 WL 3390820 (D. Md. May 11, 2023).............................................13

*Gage v. Mayo Clinic*,
No. 22-CV-02091, 2023 WL 3230986 (D. Ariz. May 3, 2023) ............................................18

*Golod v. Bank of Am. Corp.*,
403 F. App'x 699 (3d Cir. 2010) ...........................................................................................8

*Griffin v. Massachusetts Dep't of Revenue*,
No. 22-CV-11991, 2023 WL 4685942 (D. Mass. July 20, 2023)....................................11, 12

*Johnson v. Mount Sinai Hosp. Grp., Inc.*,
No. 22-CV-2936, 2023 WL 2163774 (E.D.N.Y. Feb. 22, 2023) ...........................................22

*Jones v. Sch. Dist. of Philadelphia*,
198 F.3d 403 (3d Cir. 1999).................................................................................................16

*Kiel v. Mayo Clinic Health Sys. Se. Minnesota*,
No. CV 22-1319, 2023 WL 5000255 (D. Minn. Aug. 4, 2023) ............................................13

*Leake v. Raytheon Techs. Corp.*,
No. 22-CV-00436, 2023 WL 2242857 (D. Ariz. Feb. 27, 2023)...........................................17

*Leigh v. Artis-Naples, Inc.*,
No. 22-CV-606, 2022 WL 18027780 (M.D. Fla. Dec. 30, 2022)..........................................20

*Librandi v. Alexion Pharms., Inc.*,
No. 22-CV-1126, 2023 WL 3993741 (D. Conn. June 14, 2023)...........................................22

*Lucky v. Landmark Med. Of Michigan, P.C.*,
No. 23-CV-11004, 2023 WL 7095085 (E.D. Mich. Oct. 26, 2023) .................................11, 12

*Lundstrom v. Contra Costa Health Servs.*,
No. 22-CV-06227, 2022 WL 17330842 (N.D. Cal. Nov. 29, 2022) *aff'd*, No.
22-16946, 2023 WL 6140588 (9th Cir. Sept. 20, 2023).......................................................22

*McNeil v. Greyhound Lines, Inc.*,
  69 F. Supp. 3d 513 (E.D. Pa. 2014), *aff'd sub nom. McNeill v. Greyhound Lines, Inc.*, 628 F. App'x 101 (3d Cir. 2015)...................................................................8

*Neitzke v. Williams*,
  490 U.S. 319 (1989)....................................................................................................7

*Oakley v. Orthopaedic Assocs. of Allentown, Ltd.*,
  742 F. Supp. 2d 601 (E.D. Pa. 2010) ......................................................................16

*Parnell v. Sec'y Pennsylvania Dep't of Corr.*,
  693 F. App'x 120 (3d Cir. 2017) ...............................................................................8

*Passarella v. Aspirus, Inc.*,
  No. 22-CV-287-JDP, 2023 WL 2455681 (W.D. Wis. Mar. 10, 2023)...................13

*Prida v. Option Care Enterprises, Inc.*,
  No. 23-CV-00905, 2023 WL 7003402 (N.D. Ohio Oct. 24, 2023)........................13

*In re Radian Sec. Litig.*,
  No. CIV.A.07-3375, 2010 WL 1767195 (E.D. Pa. Apr. 30, 2010) .........................4

*Reichert v. Infusion Partners, L.L.C.*,
  No. 22-CV-5450, 2023 WL 4685377 (E.D. La. July 21, 2023) .............................20

*Shane v. Bio-Techne Corp.*,
  No. 22-CV-3039, 2023 WL 3936638 (D. Minn. June 9, 2023)..............................18

*Shelton v. Univ. of Med. & Dentistry of N.J.*,
  223 F.3d 220 (3d Cir. 2000)........................................................................................8

*Shklyar v. Carboline Co.*,
  616 F. Supp. 3d 920 (E.D. Mo. July 21, 2022), *aff'd*, No. 22-2618, 2023 WL 14817782 (8th Cir. Feb. 3, 2023), *cert. denied*, No. 23-145, 2023 WL 6558492 (U.S. Oct. 10, 2023)..................................................................................21

*Speaks v. Health Sys. Mgmt., Inc.*,
  No. 22-CV-00077, 2022 WL 3448649 (W.D.N.C. Aug. 17, 2022) .......................22

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)....................................................................................................4

*Together Emps. v. Mass Gen. Brigham Inc.*,
  573 F. Supp. 3d 412 (D. Mass. 2021) *aff'd*, 32 F.4th 82 (1st Cir. 2022)................21

*Troulliet v. Gray Media Grp., Inc.*,
  No. CV 22-5256, 2023 WL 2894707 (E.D. La. Apr. 11, 2023) ........................15, 18

*Ulrich v. Lancaster Gen. Health*,
No. CV 22-4945, 2023 WL 2939585 (E.D. Pa. Apr. 13, 2023) ..........................................9, 10

*Winans v. Cox Auto., Inc.*,
No. 22-CV-3826, 2023 WL 2975872 (E.D. Pa. Apr. 17, 2023)..............................................14

**Statutes**

Civil Rights Act of 1964 Title VII........................................................................... *passim*

Pennsylvania Human Relations Act...............................................................................1

**Other Authorities**

First Amendment ....................................................................................................10

Federal Rule of Civil Procedure 12(b)(6) ..............................................................4, 7, 8

## I.    **INTRODUCTION**

Early in the COVID-19 pandemic, AstraZeneca Pharmaceuticals LP ("AstraZeneca" or "AZ") devoted significant resources to developing one of the first available COVID-19 vaccines and committed to a partnership with Oxford University to ensure broad and equitable vaccine access globally.[1] In the midst of the pandemic, after widespread outbreaks of new COVID-19 variants, AstraZeneca implemented a requirement that employees get vaccinated against COVID-19 or get approved for a reasonable accommodation exemption. There is nothing unlawful about a private employer like AstraZeneca adopting these requirements and Plaintiff does not contend otherwise.

Matthew Mullen, the Plaintiff in this case, requested a religious exemption from the vaccine requirement. After thorough review and engagement with Plaintiff regarding his request for accommodation, AstraZeneca did not find that Plaintiff was qualified for an exemption and denied his request. Consequently, Plaintiff—like all other AstraZeneca employees who were not approved for an exemption—was required to get vaccinated against COVID-19. When Plaintiff refused to get vaccinated and comply with this workplace requirement, AstraZeneca terminated his employment.

Plaintiff alleges that AstraZeneca violated Title VII of the Civil Rights Act of 1964 ("Title VII") and the Pennsylvania Human Relations Act by: (i) failing to accommodate his religious beliefs; (ii) engaging in disparate treatment discrimination against him on the basis of those beliefs; and (iii) retaliating against him based on his request for an exemption to the vaccine mandate. These claims all fail.

---

[1] *See* AstraZeneca COVID-19 Vaccine (AZD1222), ACIP COVID-19 Emergency Meeting Presentation, p.4 (Jan. 27, 2021), https://www.cdc.gov/vaccines/acip/meetings/downloads/slides-2021-01/02-COVID-Villafana.pdf.

1

<u>First</u>, Plaintiff cannot maintain a failure to accommodate claim because his objections to receiving the COVID-19 vaccine were based on his personal preference rather than a tenet of any religion that prohibited him from getting vaccinated. The basis of Plaintiff's objection, that he sought out guidance from God and decided not to get vaccinated after doing so, is so fungible that it could be used to avoid any unwanted work obligation, such as showing up to a shift scheduled to begin at 9:00 am or working on sunny Friday afternoons. At most, it is an isolated teaching not protected by applicable law.

Moreover, the Complaint specifically emphasizes across more than 20 paragraphs how COVID-19 vaccines are unnecessary and AZ's mandate was futile, explaining that "vaccines were largely ineffective at controlling the spread of COVID-19." Compl. ¶ 42. This secular opposition to vaccination further demonstrates that Plaintiff's decision to avoid getting vaccinated was not premised on any religious tenet or practice and rather was a personal decision that, while his to make, is not protected by applicable law. Courts have consistently dismissed cases like this one, where a plaintiff's stated religious objection to a vaccination requirement boils down to nothing more than a claim that they prayed to God and followed their conscience when making the decision to get vaccinated or not.

<u>Second</u>, Plaintiff fails to plausibly allege, as he must to maintain a disparate treatment claim, that he was treated differently than any other individual on the basis of his religious beliefs. Plaintiff not only concedes that "all employees must take the vaccine unless they were exempted" (Compl. ¶ 8), but further admits that "[t]here were numerous other employees of various faiths that received exemptions." Compl. ¶ 16. Plaintiff does not identify a single comparator outside his protected group, either directly or indirectly, who he alleges was treated more favorably than him. Plaintiff does not allege, because he cannot, that AstraZeneca exempted any individual who was

not religious from the vaccination requirement. This deficiency is fatal to his disparate treatment claims.

Third, Plaintiff fails to plausibly allege that AZ retaliated against him for two distinct reasons. Plaintiff makes clear that his claimed protected activity is limited to his request for a religious accommodation. Simply submitting a request for a religious accommodation, unlike requests for disability-based accommodations, is not a protected activity and cannot be the basis for a Title VII retaliation claim. Plaintiff also includes a passing conclusory reference to undescribed opposition to AZ's unlawful practices, but never specifies what protected activity this refers to and thus, this vague assertion is insufficient to maintain a claim. Even if Plaintiff did engage in some form of protected activity regarding the vaccine mandate, his retaliation claims would still fail because he cannot establish any causation between the purported protected activity and his termination of employment. There is no dispute that AstraZeneca announced that all employees nationwide must get vaccinated or be approved for an accommodation or it may terminate their employment before Plaintiff engaged in any even potentially protected activity. When Plaintiff refused to comply with the vaccine mandate's requirements, AZ did then end his employment in line with its prior announcements. Courts have repeatedly dismissed similar vaccine accommodation request-related retaliation claims for lack of causation where the employer rolled out a nationwide vaccine mandate, informed employees that they would be separated if they remained unvaccinated, and the employee chose not to get vaccinated after their accommodation request was denied. Plaintiff's retaliation claims are woefully deficient.

For these reasons, and as further discussed below, the Court should dismiss the Complaint in its entirety.

## II.    FACTUAL BACKGROUND AND ALLEGATIONS[2]

### A.    AZ Announces the Uniform Vaccine Policy for All U.S. Employees.

On February 15, 2022, AZ communicated the process for requesting an exemption to its COVID-19 vaccination mandate to all U.S.-based employees, including Plaintiff. *See* Exhibit A (AZ's Vaccination Communication);[3] *see also* Compl. ¶¶ 8, 42 n.2. This communication explained that "all US-based employees are required to provide proof of COVID-19 vaccination or go through the process to request a legal exemption." *See* Exhibit A. It further stated that employees could "[a]pply for medical, religious, or any applicable state exemptions" and that "**[e]mployees who decline vaccination should understand this may result in the termination of your employment** at AstraZeneca." *Id.* (emphasis in original).

### B.    Plaintiff's Request for an Exemption From the Vaccination Requirement Was Based on Non-Religious Considerations.

On February 22, 2022, Plaintiff submitted an exemption request to AZ's vaccine mandate using a Religious Reasonable Accommodation Request Form (the "Request Form") that AZ provided. Compl. ¶¶ 8, 28.[4] The first prompt in the Request Form asks individuals to "Please

---

[2] AZ recounts certain allegations asserted in Plaintiff's Complaint solely for purposes of addressing his claims at the pleading stage. AZ denies all of Plaintiff's allegations of discrimination, retaliation, and any other alleged wrongdoing.

[3] The Court may consider this communication without converting this Rule 12(b)(6) motion into a motion for summary judgment because Plaintiff's compliance with the vaccine mandate is at the heart of this dispute and Paragraph 8 of the Complaint specifically refers to and incorporates this communication when it states that Plaintiff "received a notice from Defendant which stated that all employees must take the vaccine unless they were exempted due to religion or disability." *See, e.g.*, *In re Radian Sec. Litig.*, No. CIV.A.07-3375, 2010 WL 1767195, at *1 n.3 (E.D. Pa. Apr. 30, 2010) ("A court must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on motions to dismiss, including documents incorporated into the complaint by reference.") (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007)).

[4] A complete copy of Plaintiff's COVID-19 vaccination accommodation request form, which is incorporated into the Complaint, is attached as Exhibit B. Because the request forms are referenced in the Complaint and are integral to Plaintiff's religious discrimination claims, and because the

describe the nature of your objection(s) to the Company's COVID-19 vaccination requirement."
Compl. ¶ 28; Ex. B. Plaintiff responded by writing a single sentence:

- "After much time spent praying about this, it is my deeply and sincerely held religious belief that God['s] will and [sic] has protected me in the area of Covid." *Id.*

When prompted to describe the sincerely held religious belief that purportedly prevented him from being vaccinated, Plaintiff again wrote just one sentence, indicating:

- "The bible tell[s] us that we should take our problems and questions to God through prayer and he will give us answers to the questions we ask of him." *Id.*

The Request Form also asked Plaintiff to provide information on how his religious beliefs that prevent him from receiving the COVID-19 vaccine affect other areas of his life, including if he had received other vaccines in the past. *Id.* Plaintiff did not provide any information on whether he had received other vaccines in the past, instead stating only:

- "Whenever I have major questions I always put them before God and trust that he knows what is best for me and will lead me to the right answer." *Id.*

Finally, the Request Form asked Plaintiff if he had "ever requested a religious accommodation previously, either on your own behalf or on behalf of a family member, such as a child who was subject to a school's vaccination requirements." *Id.* In response, Plaintiff simply wrote "N/A." *Id.*

### C.   Plaintiff's Follow-up Communications in the Interactive Process Did Not Provide Any Further Information About His Beliefs.

After reviewing the minimal information included in Plaintiff's Request Form, AZ contacted Plaintiff on March 21, 2022 and requested that he answer two additional questions

---

authenticity of the request forms cannot reasonably be disputed, the request forms are appropriate for judicial consideration at the motion to dismiss stage.

regarding his request. Compl. ¶¶ 10, 32.[5] On March 25, 2022, Plaintiff responded and provided similar information to what he included in the Request Form. Compl. ¶¶ 11, 32.

AZ first asked Plaintiff if there was a website, reading or letter from a religious leader he follows that AZ could review to "learn more about your religious beliefs." Compl. ¶ 32; Ex. C. Plaintiff did provide a website link to his church but made clear that his views were his own and that the beliefs on the Church's website do not always match his views. *Id.*

Second, AZ renewed its request for information from Plaintiff on how his beliefs that prevent him from getting vaccinated impact other areas of his life, including whether he had received vaccines or other medical treatment in the past. *Id.* In response, Plaintiff simply repeated his statement on the Request Form that "Whenever I have major questions I always put them before God and trust that he knows what is best for me and will lead me to the right answer." *Id.* Plaintiff declined to provide any additional information regarding his beliefs, how he practiced those beliefs, how they impact him, and steadfastly refused say whether his beliefs prevented him from receiving any other vaccinations or medication. *See id.*

**D.**     **After Plaintiff Chose to Remain Unvaccinated, AZ Terminated His Employment For Failing to Comply with the Vaccine Mandate.**

On March 31, 2022, after reviewing Plaintiff's responses to the follow-up questions sent as part of the interactive process, AZ denied Plaintiff's request for accommodation because he failed to articulate that he could not get vaccinated based on a sincerely held religious belief. Compl. ¶ 12. On April 20, 2022, Plaintiff contacted AZ and expressed his desire to remain employed, however, in doing so, he confirmed that he would not comply with the vaccine mandate. *Id.* ¶ 13.

---

[5] A complete copy of Plaintiff's responses to the follow-up questions is attached as Exhibit C.

AZ responded on April 20, 2022, noting that Plaintiff's request had been denied, and that he would need to receive his first vaccine dose by April 22, 2022 to remain employed. Compl. ¶ 14. AZ further stated—consistent with its prior COVID-19 vaccination communications—that if Plaintiff chose to remain unvaccinated, his employment would be terminated on April 29, 2022. Compl. ¶ 14; *see also* Ex. A. Plaintiff refused to get vaccinated and as a result, AZ terminated his employment on April 29, 2022 for "not receiving the vaccination." Dkt. 1–3, at p.2 (Plaintiff's EEOC charge)[6]; Compl. ¶ 17.

## III.   <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 12(b)(6) is designed to allow courts to "streamline[] litigation by dispensing with needless discovery and factfinding" and eliminate baseless claims. *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989). When "the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007) (citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Under Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a complaint that fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

In order to survive a motion to dismiss, a plaintiff must present something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Under this standard, a complaint that presents only "naked assertion[s] devoid of further factual enhancement" does not suffice. *Id.* (citations omitted). "To survive a motion to dismiss, a

---

[6] Plaintiff's EEOC charge is attached to the Complaint as Exhibit A, filed on the docket, and specifically incorporated into the Complaint in Paragraph 6.

complaint must state a claim 'that is plausible on its face' by including facts which 'permit the court to infer more than the mere possibility of misconduct.'" *Parnell v. Sec'y Pennsylvania Dep't of Corr.*, 693 F. App'x 120, 121 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678–79). The complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Cope v. Soc. Sec. Admin.*, 532 F. App'x 58, 60 (3d Cir. 2013) (quoting *Twombly*, 550 U.S. at 555). "When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, a court must accept all well-pleaded allegations as true and view them in the light most favorable to the plaintiff." *Golod v. Bank of Am. Corp.*, 403 F. App'x 699, 702 (3d Cir. 2010).

## IV.   ARGUMENT[7]

### A.   The Court Should Dismiss Plaintiff's Failure to Accommodate Claims.

To state a *prima facie* case for failure to accommodate, a plaintiff must plead that he: (i) has a sincere religious belief that conflicts with an employment requirement; (ii) informed the employer of that belief; and (iii) was disciplined for failure to comply with that employment requirement. *Divine Equal. Righteous v. Overbrook Sch. for the Blind*, No. CV 23-846, 2023 WL 4763994, at *4 (E.D. Pa. July 26, 2023) (citing *Shelton v. Univ. of Med. & Dentistry of N.J.*, 223 F.3d 220, 224 (3d Cir. 2000)). Plaintiff's Complaint fails to establish that he has a sincerely held religious belief that actually conflicts with AZ's vaccine mandate or that he communicated such a belief to AZ.

---

[7] The legal standards are the same for Plaintiff's Title VII and PHRA claims, so the arguments below refer and apply equally to both set of allegations. *Divine Equal. Righteous v. Overbrook Sch. for the Blind*, No. CV 23-846, 2023 WL 4763994, at *3 n.3 (E.D. Pa. July 26, 2023); *McNeil v. Greyhound Lines, Inc.*, 69 F. Supp. 3d 513, 515 n.2 (E.D. Pa. 2014), *aff'd sub nom. McNeill v. Greyhound Lines, Inc.*, 628 F. App'x 101 (3d Cir. 2015).

In determining "whether an employee's beliefs are religious" for Title VII purposes, a court considers whether they: (i) address fundamental and ultimate questions on deep and imponderable matters; (ii) are comprehensive in nature; and (iii) are accompanied by certain formal and external signs. *Blackwell v. Lehigh Valley Health Network*, No. 5:22-CV-03360-JMG, 2023 WL 362392, at *5 (E.D. Pa. Jan. 23, 2023) (quoting *Brown v. Children's Hosp. of Philadelphia*, 794 Fed. App'x. 226, 227 (3d Cir. 2020)). As the Third Circuit has explained, "[t]his definition has met with considerable agreement." *Fallon v. Mercy Cath. Med. Ctr. of Se. Pennsylvania*, 877 F.3d 487, 491 (3d Cir. 2017) (citing cases).

Under this framework, "it is not sufficient merely to hold a sincere opposition to vaccination; rather, the individual must show that the opposition to vaccination is a religious belief." *Brown*, 794 F. App'x at 227 (citations omitted). As such, multiple courts in this Circuit "have not accepted the proposition that Title VII protects what a plaintiff essentially asserts is a divinely granted right to pick and choose," particularly in the context of the COVID-19 vaccine. *See Ulrich v. Lancaster Gen. Health*, No. CV 22-4945, 2023 WL 2939585, at *4–5 (E.D. Pa. Apr. 13, 2023) ("[Plaintiff's] reliance upon a divine 'command to exercise bodily autonomy,' and assertion that "God has given her liberty to live according to His calling,' . . . asserts, as in *Finkbeiner*, a 'blanket privilege' where she alone is the arbiter for decisions which she expects her employer to 'unfailingly respect.'"); *Finkbeiner v. Geisinger Clinic*, 623 F. Supp. 3d 458, 465 (M.D. Pa. 2022), appeal dismissed, No. 22-2714, 2023 WL 6057495 (3d Cir. Sept. 18, 2023) (plaintiff's "belief that she has a 'God given right to make [her] own choices'—which, implicitly, her employer must unfailingly respect—would amount to 'a blanket privilege' and a 'limitless excuse for avoiding all unwanted … obligations'").

Indeed, the Third Circuit has long rejected the "conten[tion] that certain ideas should be declared religious . . . merely because an individual alleges that his life is wholly governed by those ideas," and has "decline[d] to adopt such a self-defining approach to the definition-of-religious problem." *Africa v. Com. of Pa.*, 662 F.2d 1025, 1035 (3d Cir. 1981).[8] Rather, "the Court of Appeals for the Third Circuit recognizes that the very concept of ordered liberty precludes allowing a person 'a blanket privilege' to 'make his own standards on matters of conduct in which society as a whole has important interests.'" *Ulrich*, 2023 WL 2939585, at *4 (quoting *Africa*, 662 F.2d at 1031). That type of assertion is "not 'religious,' but rather 'philosophical and personal,'" which Title VII does not protect. *Id.* (quoting *Africa*, 662 F.2d at 1034–35).

Plaintiff's Request Form makes clear that he puts major questions like getting vaccinated before God and then makes a decision that he states is based on God knowing what is best for him. Compl. ¶¶ 28, 32. Yet, Plaintiff refused to provide any other examples of major questions he considered in a similar manner, despite having ample opportunity to do so. Plaintiff does not explain how his belief system addresses any fundamental or ultimate question other than that he asks God those questions. He specifically refused to explain how his religion is comprehensive in nature and he declined to provide any examples throughout the interactive process that demonstrate how his opposition to COVID-19 vaccination is anything more than an isolated teaching. It therefore fails to meet the Third Circuit's test in *Fallon* and *Brown* for what constitutes a protected sincerely held religious belief. Moreover, Plaintiff's explanation for why he cannot be vaccinated, that he put the question before God and was led to the right answer, is the exact type of "fungible" statement that could cover anything a plaintiff wants it to, rather than the type of "comprehensive

---

[8] *Africa* was a First Amendment case, but "it has frequently been cited in Title VII cases." *Ulrich*, 2023 WL 2939585, at *5.

system of beliefs about fundamental or ultimate matters" protected by Title VII. *Finkbeiner*, 623 F. Supp. 3d at 465–66.

Although Plaintiff's Request Form and follow-up responses do reference religion, prayer, and God, simply invoking religion is not sufficient to demonstrate that an employee cannot comply with a workplace requirement on the basis of a sincerely held religious belief. Two recent out-of-circuit decisions analyzed and dismissed religious discrimination cases premised on nearly identical facts. *See Lucky v. Landmark Med. Of Michigan, P.C.*, No. 23-CV-11004, 2023 WL 7095085 (E.D. Mich. Oct. 26, 2023) *and Griffin v. Massachusetts Dep't of Revenue*, No. 22-CV-11991, 2023 WL 4685942, at *7 (D. Mass. July 20, 2023). In *Lucky*, the plaintiff submitted an accommodation request form and "describes her belief as a result of a personal practice of 'praying on it' when faced with difficult life decisions." *Id.* at *7. As the court explained when granting defendant's motion to dismiss:

> Fundamentally, Lucky's amended complaint asserts that she is a non-denominational Christian that seeks to make all decisions through prayer and that God instructed her through prayer not to receive the COVID-19 vaccine. Contrary to Lucky's assertion, this does not amount to significantly more than a bare representation that the basis of plaintiff's objection to vaccination derives from a religious belief.

*Id.* (internal quotation omitted). In *Griffin*, the plaintiff "elaborated that she had closely contemplated with God and [had] been shown that [she] should not receive the COVID-19 vaccine." *Griffin*, 2023 WL 4685942, at *6 (internal quotation omitted). However, the court explained that:

> Those statements are nothing more than a bare representation that the basis of plaintiff's objection to vaccination derives from a religious belief. Plaintiff does not describe her religious beliefs or principles in any meaningful way, or how they relate to vaccines generally, or the COVID-19 vaccine specifically. Put another way, she does not allege that her religion requires her to observe certain medical limitations that include a refusal to take vaccines, or certain types of vaccines. And there is no specific indication as to how her beliefs or principles have affected other medical decisions in the past.

11

> In short, it does not appear that her opposition to the COVID-19 vaccine in particular derives from a religious belief about vaccines in general, or indeed any preexisting principle of any kind. Furthermore, there is no suggestion that the employment requirement at issue was specifically targeted at plaintiff, or those who share her religious faith. The vaccine requirement arose in the context of a pandemic that resulted in widespread illness and death throughout the Commonwealth and beyond. It is clearly neutral on its face.

*Id.*, at *7. The plaintiff's objections to getting vaccinated in *Lucky* and *Griffin* are almost verbatim to Plaintiff's stated reasons for refusing vaccination here. *See* Compl. ¶¶ 28, 32. The analysis from these courts is squarely on point and this Court should reach the same conclusion with respect to Plaintiff's failure to accommodate claims.

Also noteworthy is a recent motion to dismiss decision by a district court in Maryland reviewing similar objections to the same AstraZeneca vaccine requirement that Plaintiff was terminated for non-compliance with. *See Foshee v. AstraZeneca Pharms. LP*, No. 23-CV-00894, 2023 WL 6845425, (D. Md. Oct. 17, 2023). In *Foshee*, the Court explained that "[u]ltimately, beliefs amounting to a declaration that an employee has the right to make unilateral decisions do not constitute religious beliefs, even where religion is expressly invoked in communicating the beliefs." *Id.* at *4 (citing cases). As the Court described:

> The reasons proffered by both [plaintiff 1] and [plaintiff 2] fall within this category. [Plaintiff 1]'s position, that God gave him a conscience that tells him what to do, similarly amounts to a "blanket privilege." The same conscience-based justification could be used to evade any job requirement that [plaintiff 1] disagreed with. [Plaintiff 2]'s position that he listens to the guidance of the Holy Spirit which guides him in his difficult decisions is in the same vein.

*Id.* The Court noted that if this type of justification to avoid a workplace requirement were protected as a sincerely held religious belief, "a hypothetical plaintiff could assert, despite his shift starting at 8, that his God-given conscience or the Holy Spirit told him to rest and not start work until 10:30. Mandating that such assertions be accommodated as religious in nature would entirely frustrate an employer's ability to maintain an orderly workplace." *Id.* at *4 n.3.

Many other courts have reached a similar conclusion when analyzing objections to COVID-19 vaccination mandates premised on an employee praying to God and following their conscience in deciding not to get vaccinated. *See, e.g.*, *Friend v. AstraZeneca Pharms. LP*, No. 22-CV-03308, 2023 WL 3390820, at *3 (D. Md. May 11, 2023) (holding that where a plaintiff's objection to vaccination was based on the belief that their "conscious mind allows for rational decision making and practicing my own beliefs," "[t]hese types of assertions (which are little more than a declaration that Plaintiff has the right to make his own decisions) do not constitute religious beliefs, even where religion is more expressly invoked"); *DeVore v. Univ. of Kentucky Bd. of Trustees*, No. 22-CV-00186, 2023 WL 6150773, at *4 (E.D. Ky. Sept. 20, 2023) ("[Plaintiff] claims a religious belief that she must be 'able to choose what shall or shall not happen' to her and must live as God 'would have her live.' Simply, this seeks a religious objection to any requirement with which she disagrees. This is not a religious belief but rather an isolated moral teaching."); *Prida v. Option Care Enterprises, Inc.*, No. 23-CV-00905, 2023 WL 7003402, at *6 (N.D. Ohio Oct. 24, 2023) ("[Plaintiff's] proposed accommodation threatens to engulf every employer practice with which she disagrees. Rather than presenting a specific religious teaching that conflicts with a specific policy of her employer, [plaintiff's] request for accommodation attempts to dress up an isolated moral teaching using biblical quotes and spiritual language."); *Passarella v. Aspirus, Inc.*, No. 22-CV-287-JDP, 2023 WL 2455681, at *6 (W.D. Wis. Mar. 10, 2023) ("The court concludes that [plaintiffs] refused the vaccine based on their personal judgments about vaccine safety and not for religious reasons. They couched their requests in religious terms, claiming that their decisions had been ratified by prayer. But the use of religious vocabulary does not elevate a personal medical judgment to a matter of protected religion.") (citing *Fallon*, 877 F.3d at 492); *Kiel v. Mayo Clinic Health Sys. Se. Minnesota*, No. CV 22-1319, 2023 WL 5000255, at *10 (D.

Minn. Aug. 4, 2023) (dismissing religious discrimination claims relating to a COVID-19 testing requirement because the plaintiff "said that she prayed to God and she will follow his instructions about whether or not to test. But again, she cites no religious tenets for this presumption or explains how her religion would prohibit testing").

In addition to not establishing that Plaintiff's objections to the COVID-19 vaccine are religious in nature, the Complaint is rife with allegations regarding vaccine efficacy. In total, there are 22 separate paragraphs dedicated to Plaintiff's views on how COVID-19 vaccines are ineffective and that AstraZeneca's vaccine mandate was futile and unnecessary.[9] Plaintiff's repeated references to these plainly secular concerns regarding vaccination diminishes his purportedly religious rationale for avoiding vaccination. *See Foshee*, 2023 WL 6845425, at *5 ("[Plaintiffs] have cited secular reasons they oppose taking the vaccine (their doubts about its safety, efficacy, and necessity), combining those reasons with the reasons they assert as religion-based. Of course, harboring secular reasons alongside religious reasons does not automatically disqualify the religious beliefs, but in this circumstance, the reasons are inextricably intertwined in a way that dilutes the religious nature."); *see also Winans v. Cox Auto., Inc.*, No. 22-CV-3826, 2023 WL 2975872, at *4 (E.D. Pa. Apr. 17, 2023) (dismissing religious discrimination claim where plaintiff failed to adequately allege his objections to the COVID-19 vaccine were religious in nature because the complaint "primarily detail[ed] [p]laintiff's purely scientific, personal, and medical objections to the vaccine, including his belief that the vaccine is ineffective and his concerns with its potential side effects."); *Blackwell*, 2023 WL 362392, at *7–8 (holding plaintiff's objection to COVID-19 testing was not based on a sincerely held religious belief where she

---

[9] *See* Compl. ¶¶ 40, 41, 42, 43, 44, 45, 47, 48, 49, 50, 51, 52, 53, 54, 55, 73, 87, 98, 111, 112, 125, 137.

"challenges the factual and scientific basis for Defendant's testing requirement, contending that COVID-19 testing is 'ineffective' and that vaccinated individuals 'are just as likely to contract and spread' COVID-19 as unvaccinated individuals, and cites to a medical journal article as supporting evidence"); *Troulliet v. Gray Media Grp., Inc.*, No. CV 22-5256, 2023 WL 2894707, at *5 (E.D. La. Apr. 11, 2023) (explaining that where a plaintiff's complaint in a religious accommodation COVID-19 vaccine case was "replete with medical arguments why [the employer's] policy was inadvisable" those "allegations suggest that [the plaintiff's] beliefs regarding the COVID-19 vaccine were based on purely secular considerations or were merely a matter of personal preference").

The plethora of allegations in the Complaint concerning vaccine efficacy further demonstrate that Plaintiff's reasons for choosing not to get vaccinated are not grounded in any religious tenet or practice. Rather, they show that his objection was the result of a personal choice that was his to make and resulted in the lawful termination of his employment. *Bridges v. Houston Methodist Hosp.*, 543 F. Supp. 3d 525, 528 (S.D. Tex. 2021), *aff'd sub nom. Bridges v. Methodist Hosp.*, No. 21-20311, 2022 WL 2116213 (5th Cir. June 13, 2022) ("[Plaintiff] can freely choose to accept or refuse a COVID-19 vaccine; however, if she refuses, she will simply need to work somewhere else. If a worker refuses an assignment, changed office, earlier start time, or other directive, he may be properly fired. Every employment includes limits on the worker's behavior in exchange for his remuneration. That is all part of the bargain.").

For these reasons, the Court should dismiss Plaintiff's Title VII and PHRA failure to accommodate claims under Claim for Relief One and Four in the Complaint.

**B.**     <u>**Plaintiff's Disparate Treatment Claims Should Be Dismissed.**</u>

To state a *prima facie* case for religious discrimination disparate treatment, a plaintiff must show: (i) he is a member of a protected class because of his religious beliefs, (ii) he met the

employer's legitimate expectations, (iii) he suffered an adverse action, and (iv) similarly situated employees outside the protected class were treated more favorably, or the circumstances give rise to an inference of religious discrimination. *Oakley v. Orthopaedic Assocs. of Allentown, Ltd.*, 742 F. Supp. 2d 601, 608 (E.D. Pa. 2010) (citing *Jones v. Sch. Dist. of Philadelphia*, 198 F.3d 403, 410–11 (3d Cir. 1999). As an initial matter, while the allegations in the Second and Fifth Claims for Relief are both titled as disparate treatment claims, the actual assertions in these causes of action are limited to retaliation claims. For example, Paragraphs 78 and 116 both describe the elements of a "prima facie case for retaliation." Compl. ¶¶ 78, 116. The remaining paragraphs in these causes of action describe the protected activity that Plaintiff purportedly engaged in such as seeking a religious accommodation and how plaintiff was terminated for engaging in this behavior. Compl. ¶¶ 79–87, 117–26. At no point in either the Second or Fifth Claims for Relief does Plaintiff describe how he was subject to disparate treatment on the basis of his religious beliefs, for example by pleading that he was treated worse than anyone outside his protected group on the basis of his religious beliefs. It is clear, given he makes no allegations of disparate treatment, Plaintiff has not met his burden.

Assuming that Plaintiff actually intended to describe disparate treatment claims in the Second and Fifth Claims for Relief, Plaintiff cannot maintain these claims. The disparate treatment claims fail because Plaintiff does not allege that any AZ employee outside his protected category was treated more favorably than he was or that there are any circumstances giving rise to an inference of religious discrimination. Plaintiff does not allege that the vaccine mandate only applied to religious employees or that individuals who did not request accommodations were granted exemptions. Instead, the vaccine mandate applied to all employees nationwide (Compl. ¶¶ 8, 42 n.2; Ex. A) and Plaintiff concedes that AZ "accommodated numerous employees from around

the country who also held sincere religious beliefs that prevented them from taking the vaccine." Compl. ¶¶ 16, 107.

The Western District of Pennsylvania recently dismissed the same disparate treatment claims Plaintiff raises, finding "[the defendant's] Policy required all employees to be vaccinated and nothing in the Amended Complaint or [] Policy indicates that employees with certain religious beliefs were treated differently than other employees." *Doe(s) v. Pittsburgh Reg'l Transit*, No. 2:22-CV-01736, 2023 WL 4867850, at *8 (W.D. Pa. July 31, 2023). Additionally, as one recent decision analyzing religious discrimination disparate treatment claims in the COVID-19 vaccine context explained when dismissing those claims:

> Plaintiffs have not and cannot state a disparate treatment claim. All vaccination-exempt employees were treated the same, regardless of the reason for exemption. The vaccination mandate never mentioned religion and was therefore facially neutral, and Plaintiffs have not established that Defendant had a discriminatory intent in either issuing the vaccination mandate or implementing the health and safety protocols for vaccination-exempt employees. This alone is enough to defeat Plaintiffs' disparate treatment claim.

*Leake v. Raytheon Techs. Corp.*, No. 22-CV-00436, 2023 WL 2242857, at *5 (D. Ariz. Feb. 27, 2023). The same logic applies to this matter and supports dismissal of the disparate treatment claims.

These decisions are in good company as numerous courts have now dismissed religious discrimination disparate treatment claims premised on an employer implementing a nationwide COVID-19 vaccine policy. *See Divine Equal. Righteous*, 2023 WL 4763994, at *5 (dismissing disparate treatment race discrimination claim based on a vaccine mandate because "the sum of Plaintiffs' allegations tends to support, if anything, that [plaintiff] was fired because she, like the other Plaintiffs, refused to obtain the COVID-19 vaccination contrary to Defendant's policy"); *D'Cunha v. Northwell Health Sys.*, No. 22-CV-0988, 2023 WL 2266520, at *2 (S.D.N.Y. Feb. 28, 2023), *aff'd*, No. 23-476-CV, 2023 WL 7986441 (2d Cir. Nov. 17, 2023) (dismissing claim where

plaintiff did not "allege more favorable treatment of employees not in [her] protected group . . . [and] alleges she was terminated because [defendant] insisted that she take a vaccine—not because of her religion") (quotations omitted); *Shane v. Bio-Techne Corp.*, No. 22-CV-3039, 2023 WL 3936638, at *6 (D. Minn. June 9, 2023) (dismissing claim where plaintiff did not "allege that [defendant] discharged him for any plausible reason other than his non-compliance with a mandatory vaccination policy," and rejecting allegation that defendant's policy was created "not as a response to newly available vaccines against a novel virus, but as part of a prejudicial crusade against religion"); *Troulliet*, 2023 WL 2894707, at *2, 6 n.4 (dismissing disparate treatment religious accommodation claims where the plaintiff did not allege that defendant "treated similarly situated employees outside of her protected class more favorably" and "granted exemption requests to some employees similarly situated to [plaintiff]"); *Gage v. Mayo Clinic*, No. 22-CV-02091, 2023 WL 3230986, at *2 (D. Ariz. May 3, 2023) (dismissing disparate treatment religious accommodation claims and explaining "Plaintiff does not describe her religious beliefs, allege membership in a religious group, or otherwise explain how she is a member of a protected class. Neither does the Complaint allege facts showing that similarly situated individuals outside of her protected class were treated more favorably").

Here, like the cases above, Plaintiff alleges only that his employment was terminated for failing to comply with an employment policy that applied to all AZ employees nationwide. The Complaint specifically alleges that Plaintiff "receiv[ed] a notice from the Defendant which stated that all employees must take the vaccine unless they were exempted due to religion or disability." Compl. ¶ 8. Further, as Plaintiff stated in his EEOC charge which is attached and incorporated into the Complaint, AZ terminated his employment "for not receiving the vaccination". Dkt. 1–3, at p.2.

Additionally, the Complaint concedes that AZ did actually accommodate "numerous employees" who did hold sincere religious beliefs and were granted exemptions from the vaccine mandate. Compl. ¶¶ 16, 107. The Court should therefore dismiss the disparate treatment claims in the Second and Fifth Claim for Relief as Plaintiff cannot establish that anyone outside of his protected group was treated more favorably than Plaintiff or that his termination took place under circumstances giving rise to an inference of discrimination.

      **C.**    <u>**Plaintiff's Retaliation Claims Also Fail.**</u>

To maintain a retaliation claim, a plaintiff must show: (i) they engaged in protected activity; (ii) they were subject to an adverse action after or contemporaneously with the protected activity; and (iii) "a causal connection between the employee's protected activity and the employer's adverse action." *Divine Equal. Righteous*, 2023 WL 4763994, at *9 (internal quotation omitted).

First, a fatal flaw to Plaintiff's retaliation claims is that his alleged protected activity, requesting a <u>religious</u> accommodation, is not protected activity under applicable law. Second, even if this Court found Plaintiff had engaged in protected activity, which it should not, there still is no causation between any such activity and his termination.

      **1.**    **Plaintiff's Retaliation Claims Fail Because He Has Not Engaged In Protected Activity.**

First, "[m]erely applying for a religious accommodation—rather than opposing the allegedly unlawful denial of a religious accommodation—does not constitute protected activity for the purpose of a Title VII retaliation claim." *Divine Equal. Righteous*, 2023 WL 4763994, at *10. Accordingly, as the Court explained in *Divine Equality Righteous*, "Plaintiffs may not rely on merely applying for a religious accommodation [from the defendant's COVID-19 vaccine policy] as a form of protected activity." *Id.*; *see also Al Refat v. Franklin Fin. Servs. Corp.*, No. 19-CV-1507, 2021 WL 2588789, at *6 n.6 (M.D. Pa. June 24, 2021) (holding an employee fails to state a

Title VII retaliation claim based on an employer's denial of a religious accommodation request "because merely requesting a religious accommodation is not the same as opposing the allegedly unlawful denial of a religious accommodation") (internal quotation omitted); *Blackwell*, 2023 WL 362392, at *9 n.8 (same); *Equal Emp. Opportunity Comm'n v. N. Mem'l Health Care*, 908 F.3d 1098, 1102 (8th Cir. 2018) (same); *Reichert v. Infusion Partners, L.L.C.*, No. 22-CV-5450, 2023 WL 4685377, at *6 (E.D. La. July 21, 2023) (same); *Leigh v. Artis-Naples, Inc.*, No. 22-CV-606, 2022 WL 18027780, at *13 (M.D. Fla. Dec. 30, 2022) (same).

The Complaint plainly states, "Plaintiff engaged in protected activity under Title VII when he sought a religious accommodation," and that AZ "terminated Plaintiff for seeking a religious accommodation." Compl. ¶¶ 91, 97 (emphasis added). However, as the cases cited above demonstrate, these assertions are inadequate to show that he actually engaged in protected activity.

The Complaint also makes a vague and conclusory recitation of the "opposition" prima facie element in a retaliation claim, stating: "Plaintiff continued to oppose Defendant's unlawful practice through his formal termination," and "[such] actions were due to Plaintiff's opposition to Defendant'[s] illegal employment practice." *Id.* ¶¶ 91, 98. Notably absent from the Complaint is any information whatsoever on what these purported oppositional activities were. Plaintiff's bare recitation of this element is the precise type of "conclusory or 'bare-bones' allegations" that cannot suffice to survive a motion to dismiss. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citing *Iqbal*, 556 U.S. at 678); *see also Finkbeiner*, 623 F. Supp. 3d at 469 (failure to state a claim where plaintiff's "allegations contain[ed] no reference" to any relevant conduct and "simply repeat[ed] the name" of the legal claim).

Plaintiff's retaliation claims thus fail because he has not shown he engaged in any form of activity protected by applicable law.

>2.    **Even if Plaintiff Engaged in Protected Activity, There Is No Causal Connection Between That Activity And His Termination.**

Even if a religious accommodation request or Plaintiff's undescribed opposition to unlawful conduct could constitute protected activity, the Complaint is devoid of any factual allegations that suggest AZ terminated Plaintiff because of his request or other supposed opposition to the vaccine mandate.

The Complaint admits that Plaintiff requested his accommodation "after receiving a notice from the Defendant which stated that all employees must take the vaccine." *Id*. This notice explicitly stated, in bold: "**Employees who decline vaccination should understand this may result in the termination of your employment** at AstraZeneca." Ex. A (emphasis in original). Plaintiff cannot dispute that the vaccine mandate applied to all employees nationwide. Nor can Plaintiff argue that he engaged in any form of protected activity before AZ announced that employees must get vaccinated or have an approved exemption and that if they chose to remain unvaccinated, AZ may terminate their employment.

Many courts have dismissed retaliation claims that were similarly based on a plaintiff's refusal to get vaccinated after learning of their employer's COVID-19 vaccine mandate. *See, e.g.*, *Divine Equal. Righteous*, 2023 WL 4763994, at *10 ("[T]he claimed adverse actions were not done in retaliation for any protected activity but were instead merely actions taken consistent with Defendant's stated vaccination policy."); *Shklyar v. Carboline Co.*, 616 F. Supp. 3d 920, 927 (E.D. Mo. July 21, 2022), *aff'd,* No. 22-2618, 2023 WL 14817782 (8th Cir. Feb. 3, 2023), *cert. denied*, No. 23-145, 2023 WL 6558492 (U.S. Oct. 10, 2023) ("Given that the adverse action taken against [plaintiff] was taken pursuant to policies that were implemented before [plaintiff] engaged in her alleged protected activity, it is not reasonable to infer that there was a causal connection between the two events."); *Together Emps. v. Mass Gen. Brigham Inc.*, 573 F. Supp. 3d 412, 444–46 (D.

Mass. 2021) *aff'd*, 32 F.4th 82 (1st Cir. 2022) (finding plaintiffs likely could not show a causal connection between protected activity and adverse employment action where defendant asserted that "plaintiffs [were] subject to unpaid leave and potential termination not because they requested exemption, but because they were not approved and remain[ed] noncompliant with the Vaccination Policy"); *Lundstrom v. Contra Costa Health Servs.*, No. 22-CV-06227, 2022 WL 17330842, at *7 (N.D. Cal. Nov. 29, 2022) *aff'd*, No. 22-16946, 2023 WL 6140588 (9th Cir. Sept. 20, 2023) ("Because [defendant's] COVID-19 mitigation and vaccination policies existed before [plaintiff] opposed those policies, it is not reasonable to infer that there was a causal connection between her criticism of the policy and her termination.") (internal quotations omitted); *Librandi v. Alexion Pharms., Inc.*, No. 22-CV-1126, 2023 WL 3993741, at *8 (D. Conn. June 14, 2023) (finding there was no causation sufficient to support a retaliation claim in a decision analyzing the same vaccine mandate applicable to Plaintiff in this case "where the Defendant's COVID-19 policy—'which was undisputedly the grounds for [her] termination when she chose to remain unvaccinated—was enacted *before* she spoke up in opposition to the vaccination requirement'")[10] (emphasis in original); *Speaks v. Health Sys. Mgmt., Inc.*, No. 22-CV-00077, 2022 WL 3448649, at *6 (W.D.N.C. Aug. 17, 2022) ("[I]t is clear that the [vaccination] policy – which was undisputedly the grounds for [plaintiff's] termination when she chose to remain unvaccinated – was enacted *before* [plaintiff] spoke up in opposition to the vaccination requirement. Therefore, it is not reasonable to infer that there was a causal connection between her criticism of the policy and her termination."); *Johnson v. Mount Sinai Hosp. Grp., Inc.*, No. 22-CV-2936, 2023 WL 2163774, at *7 (E.D.N.Y. Feb. 22, 2023) (same).

---

[10] Alexion Pharmaceuticals, Inc. and AstraZeneca Pharmaceuticals LP are both subsidiaries of AstraZeneca PLC and the same COVID-19 vaccination requirement applies to both entities.

Therefore, even if the Court finds that Plaintiff did engage in some form of protected activity—which he did not—it still should dismiss the retaliation claims in the Third and Sixth Claims For Relief because there can be no causal connection between that activity and Plaintiff's termination of employment.

## V.      <u>CONCLUSION</u>

For all of these reasons, AZ respectfully requests that the Court dismiss Plaintiff's Complaint in full and with prejudice.

Dated: December 8, 2023                    Respectfully submitted,

                                      /s/    *Sarah E. Bouchard*
                                      Sarah E. Bouchard (PA77088)
                                      Morgan, Lewis & Bockius LLP
                                      2222 Market Street
                                      Philadelphia, PA  19103
                                      Tel:    (215) 963-5000
                                      Fax:    (215) 963-5001
                                      sarah.bouchard@morganlewis.com

                                      Daniel A. Kadish, NY 5293477 (*Admitted pro hac vice*)
                                      Morgan, Lewis & Bockius LLP
                                      101 Park Avenue
                                      New York, NY  10178
                                      Tel:    (212) 309-6000
                                      Fax:    (212) 309-6001
                                      daniel.kadish@morganlewis.com

                                      *Attorneys for Defendant AstraZeneca Pharmaceuticals, LP*

## **<u>CERTIFICATE OF SERVICE</u>**

I certify that on December 8, 2023 I caused the foregoing document to be filed using the

Court's CM/ECF system, which will generate a notice of electronic filing to counsel of record in

this matter.

<div align="center" style="margin-left:40%">

*/s/ Sarah E. Bouchard*
Sarah E. Bouchard

</div>