# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MATTHEW MULLEN, : | |
| : | |
| Plaintiff, : | |
| : | Civil Action |
| v. : | |
| : | No. 23-3903 |
| ASTRAZENECA PHARMACEUTICALS, LP, : | |
| : | |
| Defendant. : | |
| : | |
| : | |

**MEMORANDUM**

**J. Younge**                                                                                                     **December 14, 2023**

## I.    INTRODUCTION

Currently before this Court is Defendant AstraZeneca Pharmaceuticals, LP's Motion to Dismiss Plaintiff's Complaint. (ECF No. 10.)  The Court finds this Motion appropriate for resolution without oral argument.  Fed. R. Civ. P. 78; L.R. 7.1(f).  For the reasons set forth in this Memorandum, Defendant's Motion is Granted, and Plaintiff's Complaint is Dismissed without leave to amend.

## II.    FACTUAL BACKGROUND

Plaintiff Matthew Mullen, a former employee of Defendant AstraZeneca Pharmaceuticals, LP (hereinafter "AstraZeneca"), was terminated on April 29, 2022, after nearly twenty years of employment.  (Complaint, ¶ 7, ECF No. 1.)  Plaintiff was terminated for failure to comply with the Defendant's COVID-19 vaccination policy, which required all employees to take the vaccine unless granted a religious or disability accommodation.  (Complaint, ¶ 8, 14-15, 17, ECF No. 1.)  Plaintiff professes to be a devout Christian and applied for an exemption from the Defendant's COVID-19 vaccine policy based on his religious beliefs.  (Complaint, ¶¶ 8, 28,

32, ECF No. 1.)  Plaintiff responded to two sets of questions related to his request for a religious accommodation.  (Complaint, ¶¶ 8, 11, ECF No. 1.)

The questions posed in the Defendant's Religious Reasonable Accommodation Request Form, and Plaintiff's answers provided on February 22, 2022, are reproduced below:

> *Please describe the nature of your objection(s) to the Company's COVID-19 vaccination requirement.*
>
> After much time spent praying about this, it is my deeply and sincerely held religious belief that God will and has protected me in the area of covid.
>
> *Describe the basis of the sincerely held religious belief that requires accommodation.*
>
> The bible tell[s] us that we should take our problems and questions to God through prayer and he will give us answers to the questions we ask of him.
>
> *How long have you held the religious belief underlying your objection?  What is the name of your religion and are you a member of a place of worship (church, synagogue, mosque, etc.)?*
>
> I am a Christian that has been attending my church in Delaware for many years now.  Not only do I attend but go to and lead bible studies and serve the church in many other volunteer capacities over these years from teaching kids church, helping with IT needs, Vacation Bible Study, etc.
>
> *Please explain how the religious belief that prevents you from receiving the COVID-19 vaccine affects other areas of your life.  For example, have you received other vaccines in the past?  If so, please explain how your religious belief prevents you from getting the COVID-19 vaccine but not other vaccines.*
>
> Whenever I have major questions I always put them before God and trust that he knows what is best for me and will lead me to the right answer.
>
> *Have you ever requested a religious accommodation previously, either on your own behalf or on behalf of a family member, such as a child who was subject to a school's vaccination requirements?  If yes, please describe.*
>
> N/A

(Defendant's Exhibit B, ECF No. 11-2) (formatting added).

The questions posed in Defendant's subsequent request for additional information regarding Plaintiff's application, and Plaintiff's answers provided on March 25, 2022, are reproduced below:

> *Please provide the name of your denomination or church and the number of years that you have been a member. Is there a website, reading, or letter from a religious leader you follow that we can review to learn more about your religious beliefs?*
>
> As I have said in my previously submitted form, I am a Christian attending my church for many years now, over 10. The church can be found at sycamorehillchurch.org, the beliefs on the website are the church's and do not always match mine 100%.
>
> *Please explain how the religious belief that prevents you from receiving the COVID-19 vaccine affects other areas of your life. For example, have you received vaccines or other medical treatment in the past? If so, please explain how your religious belief prevents you from getting the COVID-19 vaccine, but not other vaccines or medical treatment.*
>
> As I have previously stated in my prior form: Whenever I have major questions I always put them before God and trust that he knows what is best for me and will lead me to the right answer.

(Defendant's Exhibit C, ECF No. 11-3) (formatting added).

Plaintiff was informed on March 31, 2022 that his request for a religious accommodation had been denied. (Complaint, ¶ 12, ECF No. 1.) On April 20, 2022, Plaintiff sent an email to Defendant reiterating his desire for an accommodation and his willingness to be compliant with other COVID-19 related policies, such as masking and testing. (Complaint, ¶ 13, ECF No. 1.) Defendant responded, stating that Plaintiff's request for an accommodation had been denied following careful consideration, and that Plaintiff must receive his vaccine by April 22, 2022 or be terminated. (Complaint, ¶ 14, ECF No. 1.) Plaintiff did not receive the vaccine by Defendant's imposed deadline of April 22, 2022 and was subsequently terminated. (Complaint, ¶ 14-15, 17, ECF No. 1.) Plaintiff concedes that other employees had been found to have met

Defendant's requirements for a religious accommodation from the COVID-19 vaccination policy.  (Complaint, ¶ 16, ECF No. 1.)  In addition to his professed religious objections to the vaccine, Plaintiff's Complaint also questions the efficacy of the vaccine.  (Complaint, ¶¶ 39-44, 47-56, ECF No. 1.)

Plaintiff initiated this action on October 8, 2023, alleging religious discrimination in violation of Title VII of the Civil Rights Act of 1964 through failure to provide a religious accommodation, disparate treatment, and retaliation, as well as accompanying violations of the Pennsylvania Human Relations Act (hereinafter "PHRA").  *See* Complaint, ECF No. 1.  On December 8, 2023, Defendant filed its Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  (ECF No. 10.)

### III. LEGAL STANDARD

The standard for a motion to dismiss pursuant to Federal Rule Civil Procedure 12(b)(6) is examined in detail in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  After *Iqbal*, it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss.  *Id.* at 678; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim [for] relief that is plausible on its face.'"  *Tatis v. Allied Interstate*, LLC, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678).  Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Iqbal*, 556 U.S. at 678).  Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (quoting *Iqbal*, 556 U.S. at 678).

Thus, this Court must examine Plaintiff's claims to determine whether it can infer that Defendants are liable for the alleged misconduct.

IV. **DISCUSSION**

    A. *Plaintiff Cannot Establish a Prima Facie Case for Religious Discrimination Based on Defendant's Failure to Provide a Reasonable Accommodation.*

Plaintiff's failure to inform Defendant of an articulable conflict between the Defendant's COVID-19 vaccination policy and a sincerely held religious belief that supports his opposition to and need for accommodation from Defendant's policy is fatal to his claim. Title VII[1] prohibits religious discrimination in employment and requires that employers reasonably accommodate an employee's religious observance unless unable to without undue hardship. 42 U.S.C. § 2000e(j). Under Title VII, a claim based on an employer's failure to provide a religious accommodation requires that the employee show that "[(1) he] holds a sincere religious belief that conflicts with a job requirement; [(2) he] informed [his] employer of the conflict; and [(3) he] was disciplined for failing to comply with the conflicting requirement." 42 U.S.C. §§ 2000e(j), 2000e-2(a)(1); *Shelton v. Univ. of Med. & Dentistry of N.J.*, 223 F.3d 220, 224 (3d Cir. 2000). Such claims are assessed based on what the employer had been informed of at the time of making the decision whether to grant or deny a requested religious accommodation. *Blackwell v. Lehigh Valley Health Network*, Civil No. 22-3360, 2023 WL 5807840, at *6-7 (E.D. Pa. Sept. 7, 2023). To survive a motion to dismiss, an employee must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of their claims." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016). It is undisputed that Plaintiff was terminated after failing to comply with Defendant's COVID-19 vaccination policy by the required deadline.

---

[1] Claims under the PHRA are interpreted "coextensively with Title VII claims." *Atkinson v. LaFayette Coll.*, 460 F.3d 447, 454 n.6 (3d Cir. 2006).

It is the responsibility of the employee to inform their employer of a conflict arising between the employer's policies and the employee's professed religious beliefs. *Geraci v. Moody-Tottrup, Intern., Inc.*, 82 F.3d 578, 581 (3d Cir. 1996). This requires that that conflict, not merely the employee's desire for an accommodation, be actually conveyed to the employer so that the employer can determine what reasonable accommodation can be provided in accordance with its obligations under Title VII. *See Miller v. Port Authority of New York & New Jersey*, 351 F. Supp. 3d 762, 778 (D. N.J. 2018) (finding that the object of a religious accommodation "is to 'eliminate[] the conflict between employment requirements and religious practices'" within the bounds of reasonableness) (quoting *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 70 (1986)). A defendant employer is not required to offer an accommodation in the absence of a conflict and, here, there was no articulable conflict that was conveyed to the Defendant.

Plaintiff's responses in his Religious Reasonable Accommodation Request Form, including that "God will and has protected [him] in the area of covid," suggest, at most, a preference against, rather than a religiously-based opposition to, receiving the vaccine. *See* Defendant's Exhibit B, ECF No. 11-2. Reliance on the existence of a religious belief is not sufficient in of itself to make out a *prima facie* case for religious discrimination under Title VII; instead, a plaintiff must actually articulate the religious belief and its relationship to the contested policy. *Shields v. Main Line Hospitals, Inc.*, Civ. No. 22-3307, 2023 WL 7129953, at *3-4 (E.D. Pa. Oct. 27, 2023). A belief that an employer's policy is unnecessary is not tantamount to a belief that that policy actively conflicts with an employee's religion, and an employer is not obligated to infer a conflict where none has been communicated.

Furthermore, if this Court was to read into the minimal explanation provided by Plaintiff and find that this sufficiently established a religious belief in conflict with Defendant's policies, this would create a nearly limitless privilege against unwanted obligations. The Third Circuit has previously cautioned against such limitless privileges, noting that the Court is precluded from allowing employees "a blanket privilege 'to make [their] own standards on matters of conduct in which society as a whole has important interests'" based on their religious objections. *Africa v. Pennsylvania*, 662 F.2d 1025, 1031 (3d Cir. 1981) (quoting *Wisconsin v. Yoder*, 406 U.S. 205, 215-16 (1972)). In *Finkbeiner v. Geisinger Clinic*, the plaintiff claimed that she was wrongfully denied a religious accommodation exempting her from COVID-19 testing based on her belief that she has a "God given right to make [her] own choices regarding what is good or bad for [her]." 623 F. Supp. 3d 458, 463 (M.D. Pa. 2022). This claim was dismissed because holding that this was a religious belief for the purpose of a Title VII religious discrimination claim would amount to creating a "blanket privilege" and a "limitless excuse." *Id.* at 464-65.

Similarly to *Finkbeiner*, Plaintiff requested a religious accommodation rooted in a broadly-articulated religious belief that could form the basis of virtually any professed conflict if so liberally construed. Defendant twice attempted to understand the basis for Plaintiff's objections, through the initial request form and a request for additional information, but much of Plaintiff's responses were, in fact, largely nonresponsive to Defendant's efforts. *See* Defendant's Exhibits B & C, ECF Nos. 11-2 & 11-3. This Court does not question the sincerity of Plaintiff's religious beliefs, nor is it necessary to for the purposes of addressing Defendant's Motion. It remains that the Plaintiff identified no religious belief to the Defendant that prevented his taking the vaccine and, thus, Defendant did not violate Title VII by not providing an accommodation.

Plaintiff spends significant time in his Complaint outlining why other accommodations protecting against the spread of COVID-19 would have been reasonable, particularly in comparison to receiving the vaccine. However, Plaintiff's concerns about the efficacy of the vaccine are non-religious in nature and do not alter the Court's determination that Plaintiff has failed to plausibly allege a *prima facie* case for failure to provide a religious accommodation. *Fallon v. Mercy Cath. Med. Ctr. of Se. Pa.*, 877 F.3d 487, 492 (3d Cir. 2017); *see also McCartney v. Austin*, 31 A.D.2d 370, 298 N.Y.S.2d 26, 27 (1969) ("[A]ppellants' opposition [to vaccination]—whether or not predicated upon their personal moral scruples or upon medical concern—is not upon religious grounds"). Accordingly, Defendant's denial of Plaintiff's request for a religious accommodation does not amount to a violation of Title VII.

      B.    *Plaintiff Has Not Raised Facts Supporting a Claim of Disparate Treatment.*

Defendant's Motion to Dismiss as to Plaintiff's disparate treatment claims must be granted as Plaintiff presents no facts suggesting that others were treated more favorably than him because of his religious beliefs. Under Title VII, a religious discrimination claim based on disparate treatment requires the plaintiff to show that "(1) [he] is a member of a protected class; (2) [he] was qualified for the position [he] sought; (3) [he] suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination." *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008). Here, Plaintiff makes mention of other employees' treatment only twice: by noting that "[t]here were numerous other employees of various faiths that received exemptions for the COVID-19 vaccine" (16) and by seeking relief based on disparate treatment. (Complaint, ¶¶ 16, 77-87, ECF No. 1.) Plaintiff does not identify any difference in treatment between him and his former colleagues other than that some employees of various unidentified faiths received a religious accommodation while his

request for a religious accommodation – which, as noted previously, was inadequate – was denied. These alleged facts do not support a plausible claim for relief.

> C. *Plaintiff Has Not Raised Facts That Would Support a Prima Facie Case for Religious Retaliation.*

Plaintiff has not plausibly alleged that his termination was connected to protected activity. To bring a retaliation claim under Title VII, a plaintiff must show "(1) that [he] engaged in a protected activity; (2) there was an adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the protected activity and the adverse action." *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015). It is undisputed that Plaintiff was subjected to an adverse employment action through his termination. While an application for, and opposition to the unlawful denial of, a religious accommodation may constitute protected activity, *Bonilla v. City of Phila.*, Civ. No. 19-3725, 2021 WL 214301, at *3 (E.D. Pa. Jan. 21, 2021), Plaintiff cannot causally connect this activity – including his April 20, 2022 letter stating that he believes he should be provided a religious accommodation, which is his only act that could be construed as opposition – to his termination (Complaint, ¶ 13, ECF No. 1). Instead, the basis for his termination was conveyed to Plaintiff and his former colleagues prior to Plaintiff's request for a religious accommodation: the Defendant implemented a mandatory vaccination policy for all persons not afforded a religious or disability accommodation, and noncompliance by a specified deadline would result in termination. *See* Defendant's Exhibit A, ECF No. 11-1. Plaintiff's termination was not a retaliatory response to Plaintiff applying for a religious accommodation – it was the foretold consequence of noncompliance absent an approved accommodation.

Plaintiff suggests that the questions posed by Defendant in the Reasonable Religious Accommodation Request Form are in of themselves indicative of retaliatory animus. However,

these questions, in addition to being neutral in nature, are part of the very interactive process[2] that Plaintiff accused Defendant of failing to properly engage in.  Requesting information as to the basis of an employee's religious objection to a company policy is part of an employer's obligations under Title VII, and that these questions sought to have a thorough understanding of how this professed religious belief manifests in Plaintiff's life does not "exceed the scope of what is acceptable under Title VII" as Plaintiff complains.  *See Philbrook*, 479 U.S. at 69 (noting that courts have upheld a duty of "bilateral cooperation" in seeking a reasonable accommodation); Plaintiff's Response to Motion, ECF No. 12, p. 13.  Plaintiff additionally makes several conclusory allegations regarding Defendant's motive in conducting this process and denying his application, including that the Defendant wanted the Plaintiff to abandon his religious beliefs, wanted to purge unvaccinated religious employees from its company, and wanted to coerce religious employees to be vaccinated.  (Complaint, ¶¶ 83, 87, 92-94, & 99, ECF No. 1.)  Mere conclusory statements, such as these, will not sustain a claim that was otherwise insufficiently alleged.  *Iqbal*, 556 U.S. at 678.  As such, the Court finds that Plaintiff has failed to plausibly allege that he was subjected to retaliation in violation of Title VII.

    D.    *Amendment Would Be Futile.*

Dismissal of a complaint without leave to amend is proper where amendment would be futile.  *Ford Southeastern Pa. Transp. Authority*, 374 F. App'x 325, 326 (3d Cir. 2010).  Evaluation of a religious discrimination claim based on a failure to provide a reasonable accommodation is based on what the employer was informed of at the time of making its

---

[2] While engagement in an "interactive process," through which an employer and employee will work together to find an appropriate reasonable accommodation, is a duty imposed by the Americans with Disabilities Act, a similar duty has not yet been imposed for Title VII religious accommodation claims.  *Miller v. Port Authority of New York & New Jersey*, 788 F. App'x 886, 890 n.19 (3d Cir. 2019).

decision.  *Shelton*, 223 F.3d at 224; *Geraci*, 82 F.3d at 581.  Plaintiff has already provided his full application for an accommodation and his follow-up communications with Defendant (Complaint, ¶¶ 13-14, 28, 32, ECF No. 1), and amendment cannot cure the insufficiency of what was actually communicated to Defendant.  As such, this Court finds that amendment would be futile.

V.  **CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss is Granted, and Plaintiff's Complaint is Dismissed without leave to amend.

An appropriate Order follows.

**IT IS SO ORDERED.**

BY THE COURT:

/s/ John Milton Younge
**Judge John Milton Younge**